Willie ROSS, Plaintiff-Appellant,

v.

Gayle FRANZEN, James Greer, and Judson Childs, Defendants-Appellees.

No. 83–2966.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1985.

Decided Nov. 20, 1985.

Rehearing Denied Dec. 16, 1985.

Clifford J. Shapiro, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Vincenzo Chimera, Ill. Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before WOOD and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

This is an appeal from an order of the magistrate, assigned by the United States District Court for the Southern District of Illinois, granting defendants' motion for summary judgment in a suit brought under 42 U.S.C. § 1983. Plaintiff Willie Ross, an inmate at Menard Correctional Center, claims that the magistrate erred by (1) granting prison officials' motion for summary judgment without providing him notice and an opportunity to respond to defendants' affidavit; (2) granting summary judgment when his complaint and the defendants' affidavit were contradictory; (3) failing to consider a request to amend his complaint to include a claim of excess confinement where he failed to sign the request; and (4) granting summary judgment when he alleged that certain officials of the Illinois Department of Corrections violated his rights during the course of and following the disposition of a disciplinary report filed against him. For the reasons given below, we reverse and remand.

I

The facts alleged in plaintiff's complaint are as follows. Ross and cellmate Nathaniel Williams had their cell searched as part of a general shakedown on April 25, 1979. While they were away in a yard, a seven-inch screwdriver was discovered in a door track above their cell door. Both men appeared before the prison Adjustment Committee on April 27.

Certain facts concerning this Committee hearing are not in dispute. Both parties agree that the procedure for hearing reports is to bring the occupants of the cell before the Committee one at a time to request a plea. Ross and Williams, one at a time, pled not guilty. After the hearing each resident was asked to step outside in the waiting room until a decision was made by the Committee. When Ross returned to the hearing room for the decision, he said to the Committee: "I am guilty. The screwdriver was mine." Ross was found guilty and sentenced to six months segre-

gation, revocation of six months good time, and lowering of his prison status to "C" grade. Williams was then found innocent of the charge, and all records relating to the charge were expunged.

Several other facts surrounding the Committee hearing, however, are contested. First, Ross alleges that both he and Williams were told by Captain Childs on their initial appearances before the Committee that if both cellmates said they were innocent, then both were going to be found guilty. Ross claims that it was this "threat" which forced the two cellmates to decide (while waiting outside in the adjoining room) that in order to be able to prove their innocence, one of them had to be out of segregation to work on their grievances. Since Williams had a college background, they chose Ross to plead guilty.

The second set of facts concerning the Adjustment Committee hearing is disputed. Ross alleges that the Committee denied his requests to (1) call Officer Kitowski (who reported the incident), (2) admit the screwdriver as evidence or compare fingerprints, (3) take a polygraph test, or (4) allow him to read a statement into the record. Following the hearing, Williams filed grievances before the Administrative Review Board repeating these allegations in addition to stating that the door track was outside the cell, that the only way to place an object into the track was from the outside of the cell (by removing two one-inch bolts with a socket and wrench), that the area outside the cell was used as a thoroughfare by residents and employees, and that Ross and Williams were locked inside their cell prior to the search.

There is nothing in the Committee summary to support or refute Ross' and Williams' version of the events. The record of the proceedings indicates only that "the charges were read by the chairman. Resident plead [sic] guilty, stating: 'The screwdriver was mine.'" The summary does not mention two (separate) pleas. Under "Basis for Decision/Evidence Relied Upon," the summary listed: "The committee's review of the charges, the ticket processed

and hearing in compliance with A.R. 804, the resident's guilty plea, and the statement by the reporting correctional employee, and the seriousness of the offense—possession of a dangerous weapon—which is a threat to the security of this institution."

Defendant Greer approved the Committee's action and Franzen approved the decision to affirm it. On July 2, 1979 Williams filed a pro se civil rights complaint on behalf of himself and Ross. This section 1983 action sought damages and an injunction against corrections officials relying in the future on only "the written word of an officer without that officer being present and no other evidence being presented except the officer's statement." Williams also filed in his own name an *in forma pauperis* affidavit and other documents.

Defendants did not file an answer to the complaint, but instead filed a "Motion to Dismiss or for Summary Judgment" on January 30, 1980. One of the documents attached to this motion was an affidavit of Captain Childs denying the version of events as alleged by Ross and Williams. There is no indication in the record that plaintiffs were notified by the court of the right to file, or the necessity of filing, a counter-affidavit to the defendants' motion to dismiss. Instead, Williams filed a "Motion to Strike" in response on March 13, 1980; although the document was filed in both Ross' and Williams' names, only Williams signed the motion. Williams alleged that Ross was detained illegally in segregation for an additional eighteen days beyond the original sentence of six months. At a hearing before the magistrate on October 8, 1982, Williams did not appear. The action by Williams was then dismissed for failure to prosecute.

The magistrate granted defendants' motion for summary judgment on October 6, 1983. The order adopted the version of events contained in defendant Childs' affidavit (including its conflict with the Committee's summary with respect to the number of pleas) and concluded that there was no constitutional violation. The order be-

came final on October 7, 1983, and the district court granted Ross' motion to appeal *in forma pauperis* and request for appointment of counsel.

## II

Plaintiff first contends on appeal that the magistrate erred in granting the prison officials' motion for summary judgment without providing Ross notice and an opportunity to respond to the defendants' affidavit. Ross filed no opposing affidavit as required by Rule 56(e) of the Federal Rules of Civil Procedure, which requires that he not rest upon the mere allegations or denials of his pleadings.[1] The consequences are that the facts asserted in defendants' affidavit are treated as true. Therefore, a straightforward application of the rule would require that summary judgment be granted in the instant case.

■ However, it has been the law of this circuit that, as a gloss on the federal rules, irrespective of any implications of due process, a district court cannot properly act upon a motion for summary judgment without giving the opposing party a "reasonable opportunity" to submit affidavits that contradict the affidavits submitted in support of the motion. There must be the opportunity to demonstrate that there is a genuine issue of material fact which precludes granting the defendants' summary judgment. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir.1982).

■ When applied to the situation of a *pro se* prison litigant in a civil suit, this "reasonable opportunity" presupposes *notice.* Mere time is not enough, because it is not realistic to impute to a prisoner without legal background the awareness of failing to respond with an opposing affidavit to a motion for summary judgment. *Id.* at 102. Just as we hold the *pro se* complaint to less stringent standards than formal papers drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), when dealing with summary judgment procedures technical rigor is inappropriate where unresponsive and uninformed prisoners are involved. *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir.1981).

■ In the instant case the record does not indicate that Ross was given such notice. In addition, the hearing on defendants' motion was not recorded and there is no indication that Ross was given an opportunity to respond to defendant Childs' affidavit. We have made it clear that if defense counsel does not give *pro se* prisoner litigants such notice, the district court must do so. *Lewis*, 689 F.2d at 103. This rule applies *a fortiori* to the magistrate as well. Indeed, because of the high volume of motions that a magistrate hears, it is particularly appropriate for a magistrate to give the required notice before the district court is burdened with this additional duty.

■ This prophylactic rule is not without exception. It is not reversible error to fail to give such notice in the limited circumstances where it appears "beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Muhammad v. Rowe*, 638 F.2d 693, 695–96 (7th Cir.1981). This is consistent with the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim as set by *Haines*, 404 U.S. at 520–21, 92 S.Ct. at 595–96.

Defendants contend that this limited exception applies here because there was "enough evidence" to establish beyond a doubt that Ross could have presented no set of facts in his support to entitle him to relief. Defendants acknowledged, however, at oral argument that the sum total of the evidence amounts to "the statement by Officer Kitowski." The mere statement

---

1. Fed.R.Civ.P. 56(e) provides, *inter alia:*
   When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

by the officer who reported finding a screwdriver in the door track of Ross' cell does not rule out a set of facts that Ross could argue and prevail upon. Although the statement of Kitowski is not ambiguous on its face, it is open to conflicting inferences. There is a set of facts which Ross seeks to prove—facts showing that he could not have had access to or control over the screwdriver in the door track—which, if proven, supports a claim for relief.

█ Defendants therefore have failed to show that this general rule, with respect to the requirement of notice to *pro se* prison litigants in civil cases of the right to file counter-affidavits and the consequences of not so filing, should not apply here. Because the magistrate in this case failed to give notice and made his findings based upon the defendants' unopposed affidavit in his Memorandum Order, and because the district court itself did not correct that situation, Ross was denied a fair and just disposition of his claim.

### III

Ross next contends, on a closely related issue, that the magistrate erred in granting defendants' motion for summary judgment in which he resolved issues of material fact. Specifically, Ross argues that the magistrate relied on the uncontested affidavits of Childs and of various prison officials; those affidavits contradicted the facts as alleged by Ross in his complaint.

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted only when the pleadings and evidentiary materials submitted by the parties reveal that there is no "genuine issue" regarding any "material fact" and that the movant is entitled to judgment as a matter of law.[2] It is also well established that the party moving for summary judgment has the burden of establishing the absence of any real dispute

as to the material facts of the case. *Cedillo v. Int'l Assoc. of Bridge*, 603 F.2d 7, 10 (7th Cir.1979); *United States ex rel. McCalvin v. Irving*, 504 F.Supp. 368, 369 (C.D.Ill.1980).

While persuasive reasons exist for utilization of summary judgment when appropriate to reduce the burdens on the courts, it is not within the province of the court to resolve issues of disputed fact in a trial by affidavit. *Adams Laboratories, Inc. v. Jacobs Engineering Co.*, 486 F.Supp. 383 (N.D.Ill.1980). Rather, the court is required to view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Ross has not filed affidavits contesting the facts as set forth in defendants' affidavits because of the lack of notice affording him the right to do so and advising him of the consequences should he fail to avail himself of that opportunity. He has, however, alleged in his complaint and grievance specific facts contradicting defendants' version of events, facts which the court need not strain to find. *See Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983); *Victory Pipe Craftsman, Inc. v. Faberge, Inc.*, 582 F.Supp. 551 (N.D.Ill.1984). Particularly in view of the fact that this is a pro se complaint, the pleadings and supporting papers must be viewed in the light most favorable to the prisoner opposing a summary judgment motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Stringer v. Rowe*, 616 F.2d 993, 999 (7th Cir.1980).

Childs' affidavit states that he did not tell Ross and Williams that if both inmates pleaded innocent they were both going to be found guilty. The magistrate adopted this version of the facts in his order.[3]

---

**2.** Fed.R.Civ.P. 56(c) provides, in relevant part: The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

**3.** The magistrate's "Memorandum Order" states:

Childs also states that he does not recall that Ross asked for the screwdriver to be entered into evidence at the hearing, and that if Ross made the request it would have been acknowledged by the chairman of the Adjustment Committee and recorded on the summary. The magistrate's order accepts this statement.[4] Childs stated that Ross made no request to have a witness called and does not address Ross' contention that he asked to have Kitowski present and respond to prepared questions. Again, the order accepts these statements as true.[5]

Finally, the magistrate's order adopts the facts presented in the Adjustment Committee Summary although they contradict Childs' affidavit as to the number of pleas made.[6]

■ There is sufficient conflict with regard to these facts so as to require resolution by a factfinder. There is also another fact, which is not controverted in itself, but is open to conflicting inferences: the screwdriver was found in the door track of the plaintiffs' cell. Neither party denies the fact that it was found; but what is disputed is whether the inference can be drawn that Ross had access to, and control over, that screwdriver. It is a dispute central to Ross' claim. In these circumstances, summary judgment is not appropriate.

---

Contrary to the plaintiff's allegation, the affidavits of defendant Judson Childs indicates that the Adjustment Committee did not state to plaintiff or his cellmate during the hearing that if neither plead guilty then both residents would be considered guilty.

4. The order states:
Plaintiff complains that the Committee refused to produce the screwdriver found in his cell and that he was not allowed a polygraph examination. Defendants' Exhibit E [affidavit of Childs] disclosed plaintiff did not request the Committee to produce the screwdriver.

5. The order states:
Plaintiff had the opportunity to call witnesses during his disciplinary hearing. The Adjustment Committee Summary and the affidavit of defendant Childs disclose plaintiff was given an opportunity to call witnesses, but failed to exercise this option.

6. The order states:

*Diebold, Inc.,* 369 U.S. at 655, 82 S.Ct. at 994; *Central National Life Ins. Co. v. F & D Company of Maryland,* 626 F.2d 537 (7th Cir.1980).

By adopting defendants' version of the material facts, and at the same time by failing to notify Ross of his opportunity to file an opposing affidavit, the magistrate has not afforded basic fairness to Ross. That fairness to a party is an overriding interest, especially where constitutional rights are concerned. Under such circumstances, the court should be especially cautious in granting summary judgment. *La-Batt v. Twomey,* 513 F.2d 641, 650 (7th Cir.1975). We find that the magistrate erred in granting defendants' motion for summary judgment.

## IV

The third issue raised on appeal is that the magistrate erred by failing to consider a request to amend Ross' complaint to include a claim of excess confinement. Ross contends that this request to amend was made in a "Motion to Strike"; although the magistrate's order refers to the plaintiff's motion, it does not address the request or the additional claim.

---

They [Ross and Williams] appeared separately before the Adjustment Committee on April 27, 1979, *at which time* plaintiff Ross plead guilty to the charge of possession of a dangerous weapon. *Accordingly,* the Committee found plaintiff Ross guilty.... [emphasis added].
Adjustment Committee Summary:
Record of Proceedings:
The charges were read by the chairman. Resident plead guilty, stating: "The screwdriver was mine."
Childs' affidavit states:
Both residents plead not guilty. After the hearing, each resident was asked to step outside in the waiting room until the decision was made by the committee. When resident Ross returned to the hearing room for the committee's decision, he said to the committee, "I am guilty. The screwdriver was mine." Consequently, based upon the evidence and the plea of guilty, resident Ross was found guilty and his cellmate was found not guilty.

The issue is governed by Rule 15(a) of the Federal Rules of Civil Procedure.[7] The rule provides that a party may amend his pleading as a matter of course at any time before a responsive pleading is served. In the case before us, defendants concede that they did not file a responsive pleading. Instead of filing an answer to Ross' complaint, defendants filed a motion to dismiss or for summary judgment. Neither such motion is a "responsive pleading" within the meaning of Rule 15. *LaBatt,* 513 F.2d at 650–51; 3 J. Moore, *Federal Practice* § 15.07[2]. Defendants concede that had plaintiff filed an amended complaint, the magistrate would have been required to allow him as a matter of right to amend his complaint and consider the additional claim.

Defendants argue, however, that plaintiff clearly failed to file an amended complaint within the meaning of Rule 15(a). The facts are that following the defendants' motion to dismiss or for summary judgment, Williams filed a two-page document entitled "Motion to Strike" in the names of Ross and Williams although only Williams had signed it. The document requested permission from the court to amend the relief requested to include damages for the eighteen days Ross claimed to have been kept in segregation beyond his six-month sentence.

Defendants base their argument that this "Motion to Strike" is not an amended pleading within Rule 15(a) upon allegations that the document does not contain any personal averments by Ross and that the statements made as to the excess confinement claim are made by Williams and not by the plaintiff. In fact, the document states that both plaintiffs submitted the enumerated facts, that "plaintiffs feel" and "plaintiffs are requesting," and that Ross specifically requested to amend the complaint.

■ Given these facts, defendants are left with the bare argument that because only Williams actually signed the doc-ument, it is not to be construed as an amended complaint. This argument ignores the policy of the court that in pro se prisoner cases, allegations of petitioners are held to less stringent standards than formal pleadings drafted by lawyers. *Haines,* 404 U.S. at 520, 92 S.Ct. at 595; *LaBatt,* 513 F.2d at 650–51. But even more important than a general policy consideration is the fact that the magistrate himself stated in his order that Ross filed a "Motion to Strike."[8] The magistrate acknowledged that Ross filed an amended complaint within the meaning of Rule 15(a). Yet, beyond that reference in his order, the magistrate failed to address Ross' additional substantive due process claim.

## V

Plaintiff contends that the magistrate erred in granting summary judgment when Ross alleged that certain officials of the Illinois Department of Corrections violated his rights during the course of and following the disposition of a disciplinary report filed against him. Defendants argue that even assuming that Ross could have created a genuine issue of fact as to his allegations, had he been given notice to respond with counter-affidavits, the dismissal of his action would still have been proper. Defendants assert that as a matter of law Ross' allegations, even if proven, would not have amounted to a deprivation of his constitutional rights. Therefore, defendants argue, there is no reversible error.

■ It is true that a court may resolve all factual disputes in favor of a non-moving party and still find that summary judgment in favor of the opposing party is correct as a matter of law, *Egger v. Phillips,* 710 F.2d 292, 296–97 (7th Cir.1983) (en banc), but we cannot agree that as a matter of law Ross' due process rights could not have been violated based on his allegations. Rather, this issue belongs to a factfinder.

---

7. Fed.R.Civ.P. 15(a) provides, in relevant part: A party may amend his pleadings once as a matter of course at any time before a responsive pleading is served.

8. The magistrate's order states:
   The plaintiff, Mr. Ross, filed, in response, a Motion to Strike on March 13, 1980.

We express no opinion on the merits of Ross' due process claim at this time.[9]

The order granting the motion for summary judgment is reversed and the case remanded to the district court for further proceedings consistent with this opinion. We strongly recommend that counsel be appointed for Ross. Circuit Rule 18 will apply.

HARLINGTON WOOD, Jr., Circuit Judge, dissenting.

Although I appreciate the concerns of my brethren, I respectfully dissent as I see insufficient justification to further pursue this prison disciplinary matter.

The screwdriver incident occurred in April, 1979. This civil rights suit was filed in July, 1979, but not by the plaintiff Ross who is serving a twenty-to sixty-year sentence for murder. It was filed by his cellmate, Williams, in his own behalf, but also purportedly in behalf of Ross. Ross did not sign the complaint, the *in forma pauperis* affidavit, or any of the other various pleadings filed by Williams. Later Williams was dismissed for failure to prosecute even though he was the only one who had done anything in the case. Ross, however, for over two and a half years prior to that had done nothing.

After the departure of Williams from the case Ross attempted to pick up Williams' suit and do something for himself. I do not believe that there was a viable lawsuit left for Ross to resuscitate for his own purposes. Williams not only failed to prosecute in his own behalf, but he had no standing to try to act in behalf of Ross, at least without some personal participation by Ross.

I would not sanction one prisoner purporting to sue in behalf of another prisoner. Pro se procedures are sufficiently lenient and forgiving without sanctioning this type of procedure which could lend itself to mischief. Now, over six years after the screwdriver was found in the cell door frame, and Ross had pled guilty in the administrative hearing, I would not send Williams' defunct lawsuit back in the name of Ross for a constitutional inquiry into the practices of the Illinois Department of Corrections, or for any other relief. I would end it by affirming the magistrate.

---

**9.** On remand the task of the district court will be to address plaintiff's allegation that the practice of the Illinois Department of Corrections is unconstitutional as applied here. This practice (which defendants characterize as a "mere discretionary guideline" and plaintiff's and defendants' oral arguments refer to as "policy") is expressed by Childs in his affidavit:

> In a case where there are two inmates in the same cell who have both been charged with making or having possession of a dangerous weapon found in the cell, and neither pleads guilty or presents an adequate defense to the charges, then both are found guilty provided that the cellmates had equal access to the place where the contraband was hidden for a reasonable amount of time prior to the search. When these circumstances exist, each person is considered to be held responsible for the contraband found in their cell.

Although it is true that prisoners have some limited procedural rights in disciplinary hearings, *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974), the thrust of *Wolff* is to ensure that there is no arbitrary deprivation of rights. The procedural requirements outlined in *Wolff* were established to provide an inmate with the opportunity to relate his version of the events at issue to the Adjustment Committee. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984). The basic consideration is fair play—whether imposing a procedural rule will adversely affect the State's interests in maintaining institutional peace and security. *Chavis v. Rowe*, 643 F.2d 1281, 1285 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). Absent a showing on remand by the Illinois Department of Corrections that institutional safety is jeopardized, it would appear that Ross has a right to present evidence to rebut the presumption of access and control.